Nock Fire Brick Company v. Commissioner.
Nock Fire Brick Co. v. Commissioner
Docket No. 5009.
United States Tax Court
1945 Tax Ct. Memo LEXIS 224; 4 T.C.M. (CCH) 432; T.C.M. (RIA) 45144; April 21, 1945
*224 Petitioner, on an accrual basis, credited to its president the full amount of his salary for the years 1941 and 1942 but paid in cash only parts thereof. The president included the full amounts in his income tax returns for such years and paid taxes thereon. Petitioner had available ample funds to pay the full salary. Held, the conditions of disallowance imposed by section 24 (c), Internal Revenue Code, have not been met and the deductions of unpaid salary are allowed. P. G. Lake, Inc., 4 T.C. 1, distinguished. Henry M. Groves, C.P.A., 1101 Citizens Bldg., Cleveland, O., for the petitioner. Thomas F. Callahan, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion The respondent determined deficiencies in the petitioner's tax liabilities as follows: 1941
1942
Income tax
$ 587.82
Declared value excess profits
tax
598.39
$ 230.99
Excess-profits tax
1,379.08
4,636.77
He also determined an over-assesment of $60.66 in the petitioner's income tax liability for the year 1942. The sole issue arises from the disallowance *226 of the sums of $4,500.53 and $4,937, representing salary credited to the president of the petitioner for the years 1941 and 1942, respectively. [The Facts] The facts were stipulated and the material portions thereof are as follows: The petitioner is a corporation organized on November 5, 1912, under the laws of the State of Ohio, with its office and principal place of business at 1243 East 55th Street, Cleveland, Ohio. The petitioner's Federal income and declared value excess-profits tax and its excess-profits tax returns for the calendar years 1941 and 1942 were filed with the collector of internal revenue for the eighteenth district of Ohio. The petitioner's books of account are kept on the accrual basis and its Federal tax returns for the years 1941 and 1942 were filed in conformity therewith. The petitioner's capital stock consisted of 250 shares of common stock, all of which, with the exception of two qualifying shares, were owned by Charles H. Nock. During the years 1941 and 1942 he was president of the petitioner. At a regular meeting of the stockholders of the petitioner held on January 22, 1941, a salary of $8,000 was voted to Charles H. Nock for the year 1941 *227 and at a regular meeting of the stockholders of the petitioner held on January 20, 1942, a salary of $8,000 was voted to him for the year 1942. The salary voted to Charles H. Nock for the years 1941 and 1942 was credited to his account on the books of the petitioner on or before December 31 of each of these years. Charles H. Nock filed his Federal income tax returns for the years 1941 and 1942 on the cash receipts and disbursements basis of accounting. He returned as income, as salary constructively received from the petitioner, the sum of $8,000 for each of the years 1941 and 1942. In its Federal income and declared value excess-profits tax return and in its excess-profits tax return for the years 1941 and 1942, the petitioner claimed as a deduction the sum of $8,000 as representing salary of Charles H. Nock for each year. As at December 31, 1941, there was due officers, per books, $6,912 and at December 31, 1942, $13,226.02; of this amount $11,919.29 represented accruals of Charles H. Nock's salary. As at March 15, 1942, the unpaid salaries amounted to $4,500.53, and at March 15, 1943, the unpaid salaries amounted to $4,937. On March 15, 1942, the petitioner's cash on hand was *228 $2,498.50 and on March 15, 1943, its cash on hand was $9,816.56. Comparative balance sheets of the petitioner for the years 1941 and 1942 are as follows: ASSETS
1941
1942
Cash
$ 3,077.23
$ 2,594.91
Notes & Acc'ts Receivable
31,473.24
40,043.54
Inventories
25,621.65
30,021.97
Investments - Stocks and
U.S. Bonds
2,400.00
8,061.50
Buildings, Equip., Furni-
ture & Fixtures
2,025.71
1,605.28
Land
36,300.00
36,300.00
Cash Surrender Value
Life Insurance
22,162.50
23,563.75
Total Assets
$123,060.33
$142,190.95
LIABILITIES & CAPITAL
Accounts payable
$ 37,978.54
$ 47,857.47
Notes Payable - Life In-
surance
19,600.00
19,600.00
Mortgage
5,700.00
4,500.00
Accrued expenses - Misc.
Taxes
334.47
230.69
Other Liabilities - Income
Taxes
4,168.37
10,068.73
Capital Stock - Common
25,000.00
25,000.00
Earned Surplus & Undi-
vided Profits
30,278.95
34,934.06
Total Liability & Capital
$123,060.33
$142,190.95
During the years 1941 and 1942, and for many prior years, the petitioner did its banking business with The Cleveland Trust Company, Cleveland, Ohio. It had never borrowed any money from The Cleveland Trust Company, except *229 a loan which was secured only by the cash surrender value of life insurance policies carried on the life of Charles H. Nock. During the pertinent period it could have borrowed the sum of $10,000 from The Cleveland Trust Company. The business of the petitioner is that of a wholesale and retail dealer in fire brick. All purchases of fire brick made by the petitioner are purchased on open account, 90 days net, with no discount for prepayment. It has been its practice to anticipate payment of invoices for fire brick purchased. By taking the full 90 days net allowed on purchases of fire brick the petitioner could have increased the amount of cash on hand at the close of business on December 31, 1941, in the sum of $23,880, and at the close of business on December 31, 1942, in the sum of $27,400. The petitioner had outstanding no bank loans other than a loan secured only by life insurance policies carried on the life of the petitioner's president. The amount of such life insurance loan as of December 31, 1941, was $19,600 and the cash surrender value of the policies of life insurance pledged to secure such loan was $22,162.50. As of December 31, 1942, the amount of such loan was $19,600 *230 and the cash surrender value of the policies pledged was $23,563.75. The deductions of $4,500.53 for the year 1941 and $4,937 for the year 1942, included in the amounts claimed by the petitioner as compensation of officers and due to Charles H. Nock, were disallowed by the respondent "under the provisions of section 24 (c) of the Internal Revenue Code." Opinion VAN. FOSSAN, Judge: The question before us is whether or not the facts bring the situation within the scope of Section 24 (c) of the Internal Revenue Code[1]. It is agreed that all conditions (subsections (1), (2) and (3)) must co-exist in order to deprive the petitioner of the deductions. Michael Flynn Manufacturing Co., 3 T.C. 932; Celina Manufacturing Co., 47 B.T.A. 967; Fincher Motors, Inc., 43 B.T.A. 673. The condition imposed by subsection (3) is obviously met, (section 24 (b) (1) (B)). Although the facts also show that Nock returned as income the full amount of his salary of $8,000 for each year, no payments of the amounts in controversy were actually made by the petitioner to Nock within 2 1/2 months after the close of each year. *231 The petitioner contends that such amounts were constructively received by Nock and hence that it constructively "paid" them to him, within the meaning of subsection (1). This contention is based on the factual grounds that the petitioner was amply able to pay the sums due; that Nock had absolute control over the disposition of the petitioner's funds and that, as president, he could direct the payment of his salary as such to himself at any time he chose. Only the first factor can be challenged. *232 On December 31, 1941, the petitioner had not paid to Nock $4,500.53 of the $8,000 salary due and credited to him for that year and on December 31, 1942, $4,937 of the 1942 salary remained unpaid. On December 31, 1941, the petitioner had $3,077.23 in cash, $2,400 in stocks and United States bonds and $2,562.50 in the excess of the cash surrender value of life insurance over the loan against the policy, or a total of $8,039.73 in cashable assets. Corresponding figures for 1942 show $2,594.91 in cash, $3,963.75 in excess cash surrender value and $8,061.50 in stocks and United States bonds, or a total of $14,620.16 in cashable assets. In addition, by delaying the payment of its fire brick accounts for the full 90 days allowed by the sellers (on which it had no discount allowance) it could have increased its cash in hand by $23,880 and $27,400 on December 31, 1941, and December 31, 1942, respectively. Furthermore, it could have obtained a loan of $10,000 from its bank at any time during the taxable years and 2 1/2 months thereafter. Under such a presentation of facts, it is uncontroveribly clear that the petitioner could have paid to Nock the portions of his accrued salary unpaid on *233 December 31, 1941, and on December 31, 1942, namely, $4,500.53 and $4,937, respectively. In his Regulations 103, at section 19.42-2, the respondent sets forth his definition of constructive receipt as follows: Sec. 19.42-2. Income not reduced to possession. - Income which is credited to the account of or set apart for a taxpayer and which may be drawn upon by him at any time is subject to tax for the year during which so credited or set apart, although not then actually reduced to possession. To constitute receipt in such a case the income must be credited or set apart to the taxpayer without any substantial limitation or restriction as to the time or manner of payment or condition upon which payment is to be made, and must be made available to him so that it may be drawn at any time, and its receipt brought within his own control and disposition. A book entry, if made, should indicate an absolute transfer from one account to another. * * * The facts in the case at bar conform to this definition. Nock was in a position to procure the payment of his salary in full but he chose to let the unpaid portions thereof remain in the petitioner's hands. They were properly "paid" within *234 the meaning of the words used in the statute and were includible in his income tax returns. Musselman Hub-Brake Co. v. Commissioner, 139 Fed. (2d) 65; Celina Manufacturing Co. v. Commissioner, 142 Fed. (2d) 449; Jacobus v. United States, 9 Fed. Supp. 41. We held in Michael Flynn Manufacturing Co., supra, under facts substantially similar to those appearing here, that the conditions imposed by section 24 (c) had not been met. The full amount of Nock's salary for each of the years 1941 and 1942 is deductible by the petitioner as compensation to its officer. The respondent relies chiefly on P. G. Lake, Inc., 4 T.C. 1, but the facts in that case are easily distinguishable from those before us. There interest, not salaries, was involved. The interest was not due until after 1939, the taxable year of both the taxpayer company and Lake, its president. The amount was not credited to Lake on the taxpayer's books nor was it ordered paid. Lake did not include it in his return for 1939. We held that the amount of the interest was not includible as constructively received in Lake's gross income for 1939. Hence subsection (2) *235 applied and the interest was excluded from the petitioner's deductions. As we have noted, the facts here are quite different. The Lake case is not in point. Decision will be entered under Rule 50. Footnotes
1. SEC. 24. ITEMS NOT DEDUCTIBLE. * * * * *
(c) Unpaid Expenses and Interest. - In computing net income no deduction shall be allowed under section 23 (a), relating to expenses incurred, or under section 23 (b), relating to interest accrued - (1) If such expenses or interest are not paid within the taxable year or within two and one half months after the close thereof; and (2) If, by reason of the method of accounting of the person to whom the payment is to be made, the amount thereof is not, unless paid, includible in the gross income of such person for the taxable year in which or with which the taxable year of the taxpayer ends; and (3) If, at the close of the taxable year of the taxpayer or at any time within two and one half months thereafter, both the taxpayer and the person to whom the payment is to be made are persons between whom losses would be disallowed under section 24 (b)↩.